## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

**SUZANNE NEWMAN and**
**TERRY NEWMAN,**

      **Plaintiffs,**

                                     **Case No.:**

**vs.**

**ST. JOHNS COUNTY WELFARE**
**FEDERATION d/b/a BayView**
**Healthcare,**

      **Defendant.**

                                **COMPLAINT**
               **DEMAND FOR JURY TRIAL**

      **COMES NOW**, Plaintiffs, SUZANNE NEWMAN and TERRY NEWMAN,

by and through their undersigned counsel, brings this lawsuit seeking declaratory relief,

injunctive relief, and monetary damages against Defendant, ST. JOHNS COUNTY

WELFARE FEDERATION d/b/a BayView Healthcare for violations of Title III of

the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973

("Section 504"), and Section 1557 of the Patient Protection and Affordable Care Act

("Affordable Care Act"). Defendant failed to provide effective communication and

meaningful access for the deaf Plaintiffs for approximately fifty-seven (57) days while

Suzanne Newman received treatment at their rehabilitation center. Defendant

intentionally denied Plaintiffs full and equal enjoyment of Defendant's services,

facilities, and privileges. Defendant failed to make reasonable modifications in

policies, practices, or procedures, and failed to take such steps as are necessary to ensure Plaintiffs were not excluded, denied services, or otherwise treated differently because of their disabilities.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the actions pursuant to 28 U.S.C. § 1331, 1343.

2.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(b)(2) because 1.) Defendant is located in this district, and 2.) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district.

## PARTIES

### Plaintiffs

3.      Plaintiff, SUZANNE NEWMAN ("Mrs. Newman"), is and was, at all times material hereto, a resident of St. Johns County, Florida. Mrs. Newman is deaf, cannot speak, and relies upon American Sign Language ("ASL") to communicate effectively.

4.      Plaintiff, TERRY NEWMAN ("Mr. Newman"), is and was, at all times material hereto, a resident of St. Johns County, Florida. Mr. Newman is hard of hearing, can speak to some degree, but gets confused and misses information, and relies upon American Sign Language ("ASL") to communicate effectively.

**Defendant**

5.       Defendant, ST. JOHNS COUNTY WELFARE FEDERATION d/b/a BayView Healthcare ("BayView") is located in St. Augustine, Florida, and is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(F), and subject to the mandates of Title III of the ADA and its implementing regulations.

6.       BayView is a recipient of federal financial assistance including, but not limited to, acceptance of Medicare and Medicaid funds and is subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

7.       Defendant is principally engaged in the business of providing health care and, therefore, subject to Section 1557 of the Patient Protection and Affordable Care Act, 29 U.S.C. § 705(20), and 42 U.S.C. § 12102. *See* 42 U.S.C. § 18116; 45 C.F.R. § 92.4, and its implementing regulations.

**FACTUAL ALLEGATIONS**

8.       Mrs. Newman, is the wife of Mr. Newman (collectively "The Newmans") and is Deaf, cannot speak, cannot lip-read, and relies upon American Sign Language ("ASL") to communicate effectively in a bi-directional manner.

9.       Mr. Newman is hard of hearing, can speak to some degree, and relies upon ASL to communicate effectively in a bi-directional manner.

10.      The Newman's have been married for fifty two (52) years, and have two (2) adult children, both of which are Deaf. The Newmans also have four (4) grandchildren, two (2) of which are Deaf.

3

11.    The Newmans live in St. Augustine, Florida only three (3) miles from the Florida School for the Deaf and Blind (FSDB), and are involved with the Deaf community.  ASL is how Mr. and Mrs. Newman communicate effectively.

12.    Mrs. Newman has glaucoma, diabetes, a pacemaker, anemia, and hypertension. When Mrs. Newman receives medical treatment, she requests an ASL interpreter. In order to engage in an interactive exchange of medical information, Mrs. Newman requires a qualified ASL interpreter.

13.    When Mr. Newman receives medical treatment he requests an ASL interpreter. In order to engage in an interactive exchange of medical information, Mr. Newman requires a qualified ASL interpreter.

14.    On approximately February 25, 2019, while at a restaurant Mrs. Newman fell, fracturing her right arm and right leg. She was transported by ambulance to Flagler Hospital for surgery.

15.    Flagler Hospital provided sign language interpreters for her and her family during the approximate four (4) day hospitalization. After undergoing surgery, she was released from the hospital on March 1, 2019, and transferred to BayView where she received rehabilitation treatment from March 1, 2019 through April 27, 2019.

16.    Prior to Mrs. Newman's arrival at BayView, Defendant was put on notice that Mrs. Newman was Deaf, and required the use of an ASL Interpreter. The patient transfer form identified her as "DEAF/MUTE."

17.    BayView is located less than three (3) miles away from the Florida

Case 3:21-cv-01096   Document 1   Filed 10/29/21   Page 5 of 17 PageID 5


School for the Deaf and Blind. Florida's only residential school for the Deaf.

18.     On March 1, 2019, the first day at BayView, an ASL interpreter from Flagler Hospital was sent for the Initial Admission meeting with Mrs. Newman and her Deaf family. There were at least three (3) Deaf people at this meeting, and during the meeting, the need for an ASL interpreter was discussed, and the family was told interpreters would be provided.

19.     For the next fifty seven (57) days, BayView did not provide a qualified ASL interpreter. BayView failed to give primary consideration to the request for interpreters by Mrs. Newman and her family.

20.     While at BayView, Mrs. Newman underwent physical therapy, occupational therapy, behavior analysis, and received other medical care. Throughout Mrs. Newman's medical records, Defendant documented Mrs. Newman is "totally deaf," "deaf," nonspeaking," her ability to hear is "highly impaired," and her speech is "unclear."

21.     The speech therapist at BayView documents that Mrs. Newman is "Deaf, ASL primary communication with new onset of fx."[1]

22.     In lieu of providing a qualified ASL interpreter, BayView forced Mrs. Newman to use a "communication board." This archaic and insufficient mechanism failed to allow Mrs. Newman to engage in an interactive exchange of her medical information.

23.     Mrs. Newman writes with her right hand, and arrived at BayView with

---

[1] "fx" refers to her fractured Humerus.

a sling on her right arm. This made it extremely difficult for Mrs. Newman to write, on a "communication board" or paper. Throughout her treatment Mrs. Newman cannot speak, and could not write.

24.     During her treatment, The Newmans and their two adult, Deaf children repeatedly requested qualified ASL interpreters for Mrs. Newman, as well as for themselves as qualified companions. BayView repeatedly denied those requests.

25.     Mr. Newman would visit his wife every day. Either his Deaf son, Todd Newman, or his deaf daughter, Tamara Pellicer, drove Mr. Newman for the visits. Due to the lack of an interpreter, they were unable to ask questions about Mrs. Newman's care and progress.

26.     Upon occasion, BayView would use a Certified Nursing Assistant ("CNA") who also had hearing loss to "interpret." However, the CNA had very limited availability because she only worked certain days of the week, and had other responsibilities at BayView.

27.     When used, the CNA would always be in a hurry due to her other duties. The Newman's were deprived of the opportunity to engage in questions about Mrs. Newman's medical care. The CNA was not used when Mrs. Newman was treated by physicians, and for many other critical medical interactions with staff.

28.      According to the CNA, she is not a qualified interpreter, and told BayView of the same in front of The Newman family.

29.     Mrs. Newman underwent Physical Therapy (PT) and Occupational Therapy (OT) every day except for Sundays. The OT was provided by different staff

members who forced Mrs. Newman to try to lipread them, or communicate by writing, when both were ineffective.

30.    During Mrs. Newman's treatment, Defendant held two (2) staffing meetings to address her care. The first meeting was believed to be held on March 7, 2019. The Newmans, and their children, had already asked for interpreters on the first day of admission, but renewed the request for the staffing meeting.

31.    At the first meeting, there was approximately seven (7) staff members present to include a physician, and all were hearing. The Newmans and their two Deaf, adult children were at the meeting. This means there were four (4) Deaf people in the room needing ASL interpreting services.

32.    The Defendant refused to provide a qualified interpreter, and attempted to use the CNA to interpret. However, the CNA could only stay for a short period of time, and then left. The Newmans and their Deaf children were forced to try to write, and sign for each other in response to inquiries and comments from the approximate seven (7) hearing, medical staff in the room. Communication was not effective, and The Newmans were unable to understand or participate.

33.    On March 23, 2019, Mrs. Newman's lab results came back as abnormal, and she was required to return to Flagler Hospital. Because of BayView's failure to provide interpreters, Mrs. Newman did not know why she was being brought back to the hospital. Mrs. Newman was scared, and wanted to know why she had to go back to Flagler, but the staff was unable to communicate with her.

34.    Mrs. Newman texted her husband and told him she had to go to the

7

hospital, but did not know why. Mr. Newman became very concerned and immediately contacted his children to get a ride to Flagler Hospital.

35.     Mrs. Newman required surgery to replace her pacemaker, and stayed at Flagler Hospital for approximately three (3) days. Flagler Hospital provided ASL interpreters for the duration of her treatment.

36.     Approximately four (4) weeks after Mrs. Newman's admission, one nurse tried using an IPad to communicate with Mrs. Newman. The nurse spoke into the IPad, and Mrs. Newman would attempt to read the words on the screen. The nurse asked Mrs. Newman to speak into the IPad, however, Mrs. Newman's speech is unclear and did not work on the IPad. The device was ineffective, and abandoned by BayView. Mrs. Newman renewed her request for an interpreter.

37.     Throughout the approximate fifty seven (57) days at BayView, Mrs. Newman was not able to participate in the social activities provided by BayView due to lack of effective communication. These activities included games, arts, and crafts.

38.     Mrs. Newman and family members were unable to effectively obtain services using the "call button." The Newman family believes the nurses may have been speaking back to them through the call button, which was ineffective since they could not hear a voice. This required the family to constantly leave the room and find a nurse for assistance. When Mrs. Newman was alone, and unable to get out of her bed, she just had to wait and hope someone would come soon to provide help.

39.     BayView failed to provide any signage in her room to alert staff she was deaf. When staff would enter the room, they would speak to her even though she

8

was deaf, and could not hear them. BayView failed to properly train their staff to work with deaf patients.

40.     On information and belief, a second staffing meeting was held a few days before Mrs. Newman's discharge. Like the first meeting, there were many hearing, medical staff members in attendance. The Newmans and their Deaf son, Todd, met with administrative and financial staff to discuss whether Mrs. Newman would stay longer or be discharged. There was no interpreter provided.

41.     In lieu of securing a qualified interpreter, BayView attempted to use a "communication board," to have a discussion between approximately six (6) hearing people, and three (3) Deaf people as a way to exchange medical information. This was not effective.

42.     On April 27, 2019, Mrs. Newman was discharged from BayView, and no interpreter was provided.

43.     Although not required by statute, Plaintiffs attempted to rectify this matter with the Defendant prior to initiating this lawsuit

44.     As noted in Mrs. Newman's medical records, she is prone to falling, and shall return again to BayView because it accepts her insurance and is a facility very close to her home. Mrs. Newman now must use a walker due to her unsteadiness on her feet. Mrs. Newman has received additional rehabilitation therapy since being discharged from BayView. Moreover, BayView provides a variety of rehabilitation services for older citizens like Mrs. Newman. Mr. Newman shall again visit her when she returns.

45.     Mrs. Newman was upset, frustrated, and confused about her medical treatment as a result of the Defendant's failure to provide effective communication.

46.     Mr. Newman was frustrated, embarrassed, and aggravated that BayView continually denied their right to effective communication.

47.     Mr. and Mrs. Newman felt badly for their Deaf children who were also left out of conversations with the medical staff.

48.     The Plaintiffs experienced humiliation, dejection, embarrassment, anger, and frustration as the direct result of Defendant's intentional, ongoing and brazen denial of their federally protected rights.

49.     Defendant's actions have caused the Plaintiffs distinct, palpable, and perceptible injury. Those injuries include, but are not limited to, those described herein.

**WHEREFORE**, Plaintiffs respectfully request the relief listed below:

<u>**COUNT I**</u>

<u>**Violations of Title III of The Americans With Disabilities Act**</u>

50.     Plaintiffs repeat and re-allege allegations ¶¶ 1-49 in support of their claims.

51.     Plaintiffs, in this Count, request declaratory and injunctive relief pursuant to Title III of the ADA.

52.     Defendant is an entity covered by Title III of the ADA, 42 U.S.C. § 12101, *et seq,* and a place of public accommodation, as defined by Title III of the ADA, 42 U.S.C. § 12181(7), 28 C.F.R. § 36.104.

53.     Defendant's actions and omissions violate their duty to ensure that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182.

54.     Defendant failed to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. § 12182 (b) (2) (A) (ii).

55.     A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities, and this includes an obligation to provide effective communication to companions who are individuals with disabilities. 28 C.F.R. § 36.303

56.     Defendant failed to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the goods, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182 (b) (2) (A) (iii) (emphasis added).

57.     The term "auxiliary aids and services" includes: "Qualified interpreters

11

on-site or through video remote interpreting (VRI) services, notetakers; real-time computer-aided transcription services; written materials; exchange of written notes… closed caption decoders…or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing." 28 C.F.R. § 36.303 (b) (1).

58.     A qualified interpreter means an interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. 28 C.F.R. § 36.104.

59.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F. R. § 36.303 (c) (1) (ii).

60.     A public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her. 28 C.F.R. § 36.303 (c) (2).

61.     Defendant failed to train their staff to communicate effectively with Deaf patients and their companions.

62.     As a result of Defendant's actions described above, Plaintiffs suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of his rights to non-discrimination on the basis of their disabilities.

63.     In engaging in this unlawful conduct described above, Defendant acted

maliciously to damage the rights and dignity of Plaintiffs.

**WHEREFORE,** Plaintiffs requests the relief set forth below:

## COUNT II

## VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

64.     Plaintiffs repeat and re-allege allegations ¶¶ 1-49 in support of their claims.

65.     The Plaintiffs are Deaf and their disabilities substantially limit major life activities, and are, therefore, considered to be individuals with a disability under Section 504.

66.     Count II is brought against the Defendant as a claim for discrimination against people with disabilities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, which provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in Section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

67.     Defendant is a recipient of federal financial assistance including, but not limited to, acceptance of Medicare and Medicaid funds, and are, therefore, subject to the requirements of Section 504. 29 U.S.C. § 794.

68.     Defendant has intentionally discriminated against Plaintiffs on the basis of their disabilities in violation of 29 U.S.C. §794 and its implementing regulations. Such discrimination includes, but is not limited to, failure to provide auxiliary aids and services, denial of effective communication, and exclusion to services based on

disability. 45 C.F.R § 84.52.

69.     Defendant's actions were intentional and with reckless disregard for the rights of the Plaintiffs, when Mrs. Newman, Mr. Newman, their son, and daughter repeatedly made affirmative requests to be accommodated.

70.     As a result of Defendant's actions described above, Plaintiffs suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress, and a deprivation of their rights to non-discrimination on the basis of their disabilities. In engaging in this unlawful conduct described above, Defendant, BayView, acted intentionally and maliciously to damage the rights and dignity of Plaintiffs.

71.     Mrs. Newman is prone to falls, and shall continue to need BayView's services in the future, as it accepts her insurance and is close to her home. Mr. Newman shall visit her during her rehabilitation.

     **WHEREFORE**, Plaintiffs respectfully request the relief listed below:

## COUNT III

## SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

72.     Plaintiffs incorporate and re-allege paragraphs ¶¶ 1-49 as it fully set forth herein.

73.     The Plaintiffs are Deaf, and their disabilities substantially limit major life activities including hearing and speaking. Accordingly, they are individuals with

a disability as defined under 29 U.S.C. § 705(20) and 42 U.S.C. § 12102.[2] *See* 42 U.S.C. § 18116; 45 C.F.R. § 92.4.

74.    Defendant is a "healthcare program or activity," receiving federal financial assistance, including Medicaid and Medicare reimbursements. They are, therefore, a covered entity under 42 U.S.C. § 18116.

75.    Section 1557 of the Patient Protection and Affordable Care Act states "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance[.]". 42 U.S.C. § 18116(a).

76.    A public entity shall give "primary consideration" to the requested accommodation by individuals with disabilities. 45 C.F.R. § 91.202. S*ee* 28 C.F.R § 35.160 (b) (1) (2).

77.    For the reasons set forth in Count II, Defendant intentionally discriminated against the Plaintiffs solely on the basis of disability, in violation of Section 1557 the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

78.    As a result of Defendant's actions described above, Plaintiffs suffered irreparable loss and injury including, but not limited to, humiliation, embarrassment,

---

[2] With the exception of its federal funding requirement, Section 504 uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable. *Badillo v. Thorpe*, 158 Fed. Appx. 208, 214 (11th Cir. 2005) (citing *Cash v. Smith,* 231 F.3d 1301, 1305 & n. 2 (11th Cir. 2000)).

emotional distress, and a deprivation of their rights to non-discrimination on the basis of their disabilities. In engaging in this unlawful conduct described above, Defendant, BayView, acted intentionally and maliciously to damage the rights and dignity of The Newmans.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiffs respectfully requests the following relief:

A.   The Court assume jurisdiction;

B.   Issue a declaratory judgment that Defendant's policies, procedures, and practices have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Affordable Care Act;

C.   Enjoin Defendant from any policy, procedure, or practice that will deny deaf individuals, such as Plaintiffs, equal access to and an equal opportunity to participate in and benefit from Defendant's services, or that denies Plaintiffs effective communication with Defendant;

D.   Order Defendant to train its employees about Plaintiffs' rights, and the rights of individuals who are deaf, to include the requirement to provide auxiliary aids and services such as qualified interpreters;

E.   Award compensatory damages to Plaintiffs;

F.   Award reasonable attorney's fees, expenses, and costs of suit; and

G.   Grant such other relief as the Court may deem equitable and just under the circumstances.

## <u>JURY DEMAND</u>

Plaintiffs demand trial by jury on all issues which can be heard by a jury.

DATE: October 29, 2021.

Respectfully submitted,

<u>/s/ Sharon Caserta</u>
Sharon Caserta, Esq.
Florida Bar No.: 0023117
Morgan & Morgan
Deaf/Disability Rights
76 South Laura Street, Suite 1100
Jacksonville, FL 32202
(904) 361-0078 (Voice)
(904) 245-1121 Videophone
(904) 361-4305 (Facsimile)
scaserta@forthepeople.com
*Counsel for Plaintiffs*

17